Our next case is a combination of two U.S. Well Services v. Halliburton, 2023, 1799 and 2106. Mr. Dowd, when you are ready. This case presents indefiniteness in a different context. Yes, Your Honor. Thank you. May it please the court. So the issue of indefiniteness here goes to the question of whether the phrase high pressure, as you used to define the pump, that's a limitation in the claim. It provides a person ordering a saloon yard an understanding of how to practice the invention. And in some sense, I think this is a bit of a unique case because it combines the holding of Tillman, for example, which dealt with the high pressure phrase, different context, different invention. But that combined with, I think, the way I read the thrust and holding of the VASF case in terms of the limitation at issue is clearly not the asserted advance of the claimed invention. But your experts disagree on the meaning of high pressure here, right? Judge Luria, they don't exactly agree, I'd put it that way. They have overlapping ranges. So there's one expert who says that high pressure is from 5,000 to 15,000 PSI. Our second expert says it's from 8,000 to 12,000 PSI. Two things on that. If anything, to me, that shows you that at least the claim can be construed based on knowledge of the art of a very ubiquitous term. And then the second is the way I would look at it is very typically in a patent specification, even though we don't have it here, you have overlapping or redundant or varying ranges that would describe a particular limitation. And again, those ranges are not in the patent specification, so we acknowledge that. But just the mere fact that our experts have different views about what constitutes high pressure does not by itself make the claim indefinite. And the case law from this court is very clear on that. Well, it really complicates things for you, though. Judge Rainer, I don't disagree with that. Clearly, we would have an easier case if our experts had agreed. And I think the important point here is that, again, it goes back and you have to really look at the claim invention and the limitation. And I think in hindsight, in a way, no one gave this a second thought in terms of high pressure, describing what a high pressure pump is. It never came up during prosecution. The examiner never had an issue with it. In fact, when our clients proposed the amended claims during the PTAP proceeding, the board initially had no problem with it in terms of indefiniteness. Halliburton had argued that it was indefinite, but the preliminary guidance in terms of the board's procedure was that, no, it's okay and we'll move forward. But then the board changed course when it came time to rule on Halliburton's motion. Did anybody argue that this is a term of special industrial usage? I believe that was a thrust of our argument, and we certainly made that clear in terms of our briefs before the court. And I'm not sure if we used, well, I know we didn't use the phrase industrial usage, but what we did try to convey was that it's a very common term. And I think we tried to lay that out in our briefs. In fact, there was prior art that was cited during the prosecution that just used the phrase high pressure pumps. And it's one of those things that if you're looking at the invention and trying to understand how to perform in this case, well, in one of the cases. It's the private art also that created additional complications for you, right? Because in the prior art, you had other ranges as well that references high pressure. Yes, that's correct, Judge Raina. But again, I think that goes more to claim construction as to whether the claim is such that you can't construe it. And we have district court cases and cases before this court all the time where you have experts coming to different opinions. And I would say that when we look at Durham's, like Halliburton's expert opinion, and this is at appendix 41-11 in the 1799 case, is that he never says, and he never says that high pressure means something. All he says is that different possetas may have different views on it. You mentioned claim construction. Was there ever any actual construction of the term or the phrase at a high pressure so that fluid passes from the wellbore, et cetera? The simple answer is no, Your Honor. It strikes me that there are two possible ways to construe that claim language. One is at a high pressure, that is to say a particular thing that is high pressure, which is the way that we've been arguing this case so far as far as I can tell between the parties. Another way possibly is at a high pressure, that is to say at such a pressure so that the fluid passes from the wellbore into the subterranean formation, which if you read it that way, it just means whatever pressure, normally will be higher than air pressure on the surface of the earth, but whatever pressure is necessary to make the fracking occur. Was that possible construction ever presented to the board or anyone else? You understand what I'm saying? Judge Brekson, I do. And I think we tried to emphasize that in our brief in the sense that there's a functional aspect to the claim in terms of high enough. And to answer your question directly, I don't believe it was presented because, again, during the prosecution of the claims and during the examination before the board in the PTAG proceeding, that limitation was never asserted. Because recall, this is an IPR, so the patent challenger can't bring up a 112 challenge. But when the patent owner goes to amend the claims, that's an opportunity. And procedurally, it's a little difficult because at that time, it's a very compressed proceeding and there's not too much opportunity to bring in new evidence. But again, I think from our client's perspective, we had that preliminary guidance from the board that essentially rejected Halliburton's position about the indefiniteness. And we thought we would be moving forward with all of the amended claims. Didn't the board find that there was an admission that the process could be used with medium pressure, raising more questions about the importance of the claim language here, high pressure? Judge, one of our experts did say that in certain circumstances, you can, in fact, cause hydraulic fracturing of the subterranean formation at a medium pressure. But in our view, that just underscores the point that a person of skill in the art would know the difference between high pressure and medium pressure when operating in context. And Durham, Halliburton's expert, sort of touches on that. He has three or four or five paragraphs, but it's really not much testimony at this point in the proceeding. But that, to follow up on Judge Lurie's question, that testimony really undercuts any argument that we should view this limitation functionly. Does it not? In other words, he's saying, well, it can be done at medium pressure, which would exclude doing it at high pressure, implicitly at least, and not support a construction that at high pressure would really ought to be read to mean high enough pressure to make the fracturing work. I agree to some extent, but again, you're reading this in the context of a limitation that you're talking about a well-known type of pump that's essentially ubiquitous in the industry. Let me put it to you this way. Suppose that someone, suppose that we were to agree with you and that this patent, this claim should survive, and someone came in and said, I want to conduct fracking using your method, but at low pressure or medium pressure. Would you think that there's no argument for infringement? Sorry, if our patent survived, is that right? Your patent survives, and someone comes in and starts to practice your patent, except that they say, we're running it at medium pressure because of what your expert said was not high pressure. Would you concede that there's no infringement in that case? Yes, Your Honor. And essentially, I think probably what should have happened here, and this goes back to your question, Judge Lurie, about the two ranges provided by our expert, is that at a minimum, we should have had the broader range. So it's a question about construing the claim and whether one is able to construe the claim. And when you look at our expert's testimony, you had two different views. And under this Court's case law, you can have competing experts in terms of the scope of the claim. But what the board and how the board erred was by just going to those two views and then concluding that that rendered the claim indefinite without our further explanation, particularly under the BASF case. And this is, again, going back to my initial point, I think this is why it makes this case a little different, in that you have the Tillman case from the Supreme Court that talks about high pressure and the flexibility. You have a strew of other places that we've discussed in our brief. But then the BASF case, this claim and this claim to invention, the asserted advance is not about what type of pump you use. It's about the overall configuration of known components that are routinely used in hydraulic fracturing. And so if you look at the facts of the BASF case, I think we're squarely within the reasoning and holding in that case because that case dealt with a limitation and a process, a chemical process, and it described catalysts. But the catalysts were well known. It didn't really provide much more beyond that. And the court in that decision essentially ruled that because that limitation is not directed to the asserted advance, then essentially there's a little more ambiguity or flexibility permitted in those types of limitations. And if I may, Your Honor, there's another case we cite, and this is in the second case, which is similar, different context, but a claim limitation dealing with high frequency. And that was the United Access Technologies case. It's a non-precedential case. But it's another one where at the end of the day, you have a term of degree. And in our view, the court's case law is quite clear that when you have terms of degree, like about an N or approximately, all of those terms are acceptable under the court's case law for 112B. And I think the better way to... Well, at least correct me if this characterization is wrong, but I would read those cases to mean about is okay if you can look at either the specification or extrinsic evidence that will tell you in this particular art what about really entails. So that if you just have about in the abstract, who knows whether it's 5% on either side of the described limitation or 20%. But if, for example, in the pharmaceutical industry, it's generally understood that plus or minus 5% is within the acceptable range of about, then you've got guidance. But if you have no guidance at all, approximately doesn't tell you much. How would you know if 25% larger or smaller than the described limitation is about or not, or approximately, unless you have some kind of guidance? So two points on that, Your Honor. Typically, there's always expert testimony that's providing that response. Not always, but quite frequently. And another important point to keep in mind here is that it was Halliburton's burden to show that the claim was indefinite. And they never addressed that point. And at a minimum, if you look at our expert testimony, that shows you an acceptable range for high pressure. You also have a written description issue. We do, Your Honor, for some of the claims. Some of the claims. And so for the first case, the 1799 case, it's a written description in terms of the amended claims and the configuration. And admittedly, the testimony is limited on that. If you have any particular questions, I'm happy to answer them. Otherwise, we've requested the briefs on that. For the second case, for the second appeal, it's purely indefiniteness. Nothing indefinite about that. Thank you, Your Honor. Unless there are any further questions, I will reserve my time. We will save it for you. Mr. Bova. Good morning, Your Honors, and may it please the Court. Justin Bova for the USPTO. The Board correctly held that this high pressure term is indefinite because neither the intrinsic nor the extrinsic evidence provided any reasonable certainty about the scope of its claims. I agree with Mr. Dowd that this is a unique case, but unique in a different sense in that the specification here provides no guidance at all with respect to what qualifies as high versus not high pressure. And as U.S. Wells' own experts admitted, there can be fracking, i.e., achieving the function that's in the claims at different pressures that are not high pressures. Suppose I have an invention to a fuel injection system, and I describe it in some detail, and at the end of the claim, it says for use in high performance vehicles. Now, suppose further that there's no definition of high performance vehicles. Do you think the claim would be indefinite in those circumstances? If there's some dispute about what qualifies as a high performance vehicle versus a not high performance vehicle. Well, the dispute would be brought up by the party arguing invalidity based on indefiniteness. They would say there's no evidence as to what a high performance vehicle is. Right, and if high performance vehicle is so well known in the art, it would be easy to provide any kind of evidence to support here's what a high performance vehicle is versus not. And in this case, as you can see. But even, but suppose people disagree that there was some overlap and everybody thinks that an Indy race car is a high performance vehicle, but some people may not think a Dodge Charger is. Right. Well, then you do have, you can have expert testimony on that, and you can make the decision. But suppose the experts disagreed. Then the fact. Do you think there would be an indefiniteness problem in that situation? Where, you know, the point of the hypothetical is that no one's really concerned about the high performance vehicle. They could have left that out and the claim would be fine and everybody would know what it's directed to. Instead, the addition of that just to sort of explain the context in which this claim arises, would it be enough to invalidate the claim on indefiniteness? It's a little bit different because it's not just, they chose to put that into the claim, so it has to be considered for purposes of meeting the requirements. And then you have here, you do have experts that are disagreeing. One of you as well as one expert, they both provide ranges. There are overlapping ranges. Then Mr. Schaaf expressly rejects Mr. Marsha's range as high pressure. And if you look at Appendix 3727, he was asked, you would not consider 5,000 psi to be high pressure. 5,000 was in Mr. Marsha's range. And Mr. Schaaf says, not when you're considering frac labs. Yeah, that is correct. So he's expressly rejecting that. Following up on Judge Gleisen's comment, question, looking at the claims here, in one case there's a limitation of plurality of transformers supplying power to step down voltage to the blender. And in the other, there are limitations about a propent, which sort of seem to focus what the claims are about. So the high pressure could be understood as simply the system on which these novel process aspects operate. But I guess your answer, again, is every word in the claim counts? Well, the word in the claim counts, especially where there is a dispute and U.S. Well itself, if you look at Appendix 1884, they are expressly distinguishing prior art based on this high pressure term. So they gave it meaning, or U.S. Well gave it meaning, and said, well, no, this prior art that says medium pressure is not meeting the high pressure term, which tells us that it has to have some meaning in response to your question, Your Honor, Judge Lurie. But the question then becomes, well, what does that mean? Where are those bounds? Where are the clear boundaries that this court requires, that the reasonable certainty standard requires? And we have nothing there to provide those clear boundaries to determine whether I crack at low pressure and achieve the function. Is that necessarily within the range? Mr. Dowd said, no, that's not infringement, but that still doesn't tell us, well, what is the pressure that is within the range? Let me ask you the same question I asked Mr. Dowd. Reading the claim language, it seems to me that it's at least amenable to the construction that the term at a high pressure so that the fluid passes from the wellbore to the duct. It seems to me it's amenable to construction that at such pressure, or at high enough pressure so that the function is performed. You would agree, I would assume, that if it read that way, if those words were in there, or if it were construed that way, that that would get rid of the indefiniteness issue. It certainly makes it easier to survive a definiteness challenge. Why not read it that way? It seems to me it would be at least a plausible reading. We usually try to construe claim language to uphold the validity of the claim. Yes, Your Honor, but also this Court says it should not redraft claims to save them from their validity. That would be what the Court would be doing here. It would be changing high pressure to high enough pressure to achieve a function. Again, going back to U.S. Wells' argument, which is medium pressure that achieves that function, it would be high enough to achieve that function, but it still wouldn't meet this claim limitation according to U.S. Wells with respect to that prior art reference. Thank you. It would essentially be changing a relative term into a nonexistent one. In terms of... There was also another question of has this term been construed before? The Western District of Texas did assess this term and held that the high pressure term was indefinite. That was in a patent that was related to... That's Judge Albright's decision, right? Yes. But also another decision by a magistrate judge in the Southern District of Texas, I guess it sort of went the other way. That's right, Your Honor, but that's another data point that the board has considered and said that that's another reason that this is indefinite because in that decision, that's the TOPS decision, the court construed that to mean 15,000 PSI or higher. That would be outside of what that narrower range, 8,000 to 12,000 is here or pushed for here. And then it also... U.S. Wells, in that case, actually asked that that decision be vacated and was not content with that. So again, more uncertainty in terms of where that range lies. There's no clear boundaries for that. And again, the board did credit... Not just... It assessed the expert's opinion from U.S. Wells and said that those were contradictory but also credited Dr. Durham, which is Halliburton's expert on that score, to say that this did not provide reasonable certainty about the scope of these claims. Thank you. Unless Your Honors have any questions about the indefiniteness or the written description, I didn't hear Mr. Dowd address that on the merits. Thank you, Mr. Bova. Thank you. Mr. Dowd has some rebuttal time. Thank you, Your Honor. So I'll leave with two points. Mainly, if we look at Judge Durham's opinion in that record, and this is at 141-11 through 41-13, his testimony, and it was Halliburton's burden to show that the claims are indefinite, his testimony only goes to show that there is some variability or some disagreement among the experts about what high pressure means. He never goes so far as to say that nobody would ever know what it means, and he never goes so far as to say that the Board could not have construed that limitation in the context of these claims, which, again, that particular limitation is directed to a well-known pump routinely used in the industry, and it ties it with a functional aspect of the claim, and when you add on the fact that this, again, is not the asserted advance of the claimed invention for either patents at issue here, our position is that Halliburton did not meet its burden to show that the claim was indefinite. And unless there are any other questions, I'll cede the remainder of my time. Thank you, Mr. Dowd. The case is submitted. Thank you.